Our second case today, number 22-1930, Virginia Garcia Cortes v. Attorney General Merrick Garland. Ms. Corbett? Good morning, Your Honor. Good to have you with us. Thank you. My pleasure. Your Honor, my apologies. Get that closer to you there, yeah. Thirdly, the judge failed to give full and fair measure to the facts before him in assessing hardship. Question of respect for the submitter, this court has the right to continue to hear her claim, pursuant to Gonzales v. Galvan, the 2021 case decided by this court. The termination of exceptional and extremely unusual hardship is available as a question of law under Section 1252-8 U.S.C. because it involves application of this standard to the facts before the court. In the incident case, the judge decided that, as a matter of law, the petitioner failed to prove the statutory eligibility requirement that her removal would cause hardship to her U.S.C. child, particularly exceptional and extremely unusual hardship. Despite Gonzales v. Galvan, the government posits that this court lacks jurisdiction to hear this claim. The government attacked various cases, such as the Supreme Court decision in Priscilla v. Garland and the reasoning in Martínez v. Clark. However, the government failed to mention that this court did in fact have the benefit of the BIA decision in 2010 of Enrique Meira-Pérez. And in that decision, the board had already determined that a finding of hardship under Title 8 of the U.S.C., Section 1229b, subsections b, 1, d, presented a mixed question of law and fact. So Congress has pretty much strapped us in many ways in terms of reviewing these kind of cases. So what you are going to is that the Supreme Court has indicated it's a question of law or a mixed question of fact and law that review may be possible at this level. And one of the arguments you make is that the immigration judge failed to consider relevant evidence. And that presents an interesting scenario if you're trying to determine, is that a question of law? Because it then says, well, there must be some procedures that require the consideration of this evidence. And failure to follow those procedures creates a question of law. What are the procedures that you maintain that requires an immigration judge to consider relevant evidence? My apologies, Your Honor. Firstly, the board has held its own precedent that the judge in cancellation of removal cases, the judge must consider the age, health, and other circumstances of U.S. citizens, children, and family members in determining hardship. It is our position that the judge in this case failed to consider all the circumstances that were relevant to the hardship in that case. In matter of YSLC, the board in 2015 also held that a respondent in immigration proceedings should expect dignity, respect, courtesy, and fairness in a hearing for an immigration judge. It was concluded in that case that the judge did not decide in a manner in which the respondent was entitled to the highest standards that are required of an immigration judge. Similarly, in this case, the judge, by inserting his own personal opinion and unsubstantiated knowledge, and thereby ignoring the expert testimony of the psychologist in that case, the judge failed to follow the proper procedural safeguards in a way that would allow him to implement and assess hardship in the fairest way to the respondent at the time. Are you referring to the psychologist's report? Is that what you're talking about? Yes, Your Honor. I thought the IJ talked about that and discussed the details of the psychologist's report. It was discussed and weight was given to it to an extent, but then in the BIA decision that can also be seen, the judge inserted his own personal opinion instead of giving full weight and assessing that report objectively. The report was very clear and it stated that even though the child at that time had made some progress in terms of her hardship and her mental and emotional health, she was still suffering from relapses and there was still inconsistent progress. The report also mentioned, and this is at the Joint Appendix, page 265. Judge Wynn pointed out there's this kind of line between the question of law and the question of fact, and if we can review under our precedent, the Supreme Court's going to take up this question, but we've said we can review the next question and we can look at whether the IJ followed the law, but we can't review the factual findings. So the IJ looked at the report and said, you know, I find this fact and that fact, but I don't find this other one convincing. We can't review that, can we? No, you can't review the actual facts and I agree with this Court's position on that case. What we are proposing is that the manner in which the judge applied the standard of exceptional and infeminine hardship to the facts was improper and incorrect in this case. So now you're not talking about not considering facts, you're talking about just the way the law applied to the facts. Yes, Your Honor. Now, the Supreme Court's got a case that's been argued and it's pending. Is it supposed to have some impact on this? It may, Your Honor, and the Court also heard Patel v. Garland in 2022, but I would differentiate Patel v. Garland versus this case because, as Judge Rushing pointed out also, that federal courts may not review the facts before them in these decisions, but they can review how the judges applied the law or the statutory standard to those facts. Is Rosalyn 21 now? She is 20 years old, Your Honor. She turns 21 this year. This year she'll turn? She's 23? She's 20 years old. She turns 21 this year, Your Honor. May I continue? Go right ahead. Thank you, Your Honor. Let me just ask you, I'd ask you about where the procedures come from, because it seems to me the Supreme Court has nuanced this whole congressional prohibition on us reviewing things by throwing in the mixed question of fact, which brings in procedural laws. And if there is a requirement for an administrative judge or immigration judge to consider relevant evidence, if that judge fails to do it, it's not a question of credibility. It's not a question of finding a fact. It's a question of didn't follow what the law requires. And so it's fundamental to know what is that requirement, where does that requirement come from for a judge to consider the relevant evidence? So when you're looking at 1229, it doesn't seem to come from B. But under A, the question then arises, are we talking about removable? This cancellation, is it the same as a removable proceeding in terms of the procedures that a judge is required to follow?  Yes, Your Honor. And as I mentioned previously, at least in the BIA decision in 2001 in Monreale, Aguinaga, the judge is required to consider certain specific factors in addressing these cancellation cases. The judges are also required to execute these cases and cite these cases in the fairest way to the respondents. And it is our submission that the immigration judge failed to do so. This court has also held in Hernandez-Avalos v. Lynch that the judges cannot inject their own unsubstantiated personal knowledge inside these cases. And we believe that in this case, this is exactly what the judge did. Instead of considering and giving full weight to the evidence before him, he based his case on his own personal decision and unsubstantiated knowledge. It seems to me, I think Congress probably, their attempt seems to me, not something for us, but they were just trying to keep these things from being reviewed by this court in a lot of ways. But the Supreme Court, in looking at this and the law that has developed, realized that, well, you can say you don't get a review, but you've got to follow at least the procedural rules in the law. You can't deny one of a better term, due process, or that in the process of it, that you've got to do your job. And that's the conundrum we're in now because the question is, you know, when you weigh the credibility type evidence along with other evidence in the record, a trial judge does not make a credibility finding that keeps you from him determining another factor that the therapist brought into question here. In this instance, probably the depression and other things that you bring up. So the question is, can he, without making that credibility finding, that doesn't affect the therapist's finding as to certain determination conclusions, and he doesn't address it. So that's the question. If that not addressing it or not dealing with something specific that was brought here, does that create a question of law? Because you're talking jurisdictional aspect of it from that perspective. Then I guess the remedy would be send it back. Is that not? I mean, that's the best remedy you get is send it back for him to make that determination. My apologies, and I believe it's funny because in the code in AUSC, the statute is very clear in terms of how it delineates what must be reviewed. First, the AG may grant cancellation, and then it lists the four eligibility requirements. The requirements are very clear. They're in black and white, and these must be applied in the way in which the statute requires. After these have been considered by the court, then it is that the AG may grant cancellation for certain non-prominent residents. And we believe that the manner in which the judge applied this standard of exceptional and extreme unusual hardship to the facts is what was improper in this case. May I continue on? You may. Go ahead. In addition to Hernandez-Avalos v. Lynch, I'd also like to make reference to this court's decision in Areval Quintero v. Garland, and this was in Courts Indulgence 2021, where this court held that administrative law judges have a duty to fully inquire into the issues necessary for adequate development of the record. Judges have a duty to fully develop the record before them. We believe that by the manner in which the judge inserted his own personal opinion into the record and into the decision, again, effectively – that the judge inserted into the record and that the BIA also included in its opinion that, I guess you're saying they weren't evidence, they were just the IJ's opinions, as the BIA accepted. What exactly are those? Your Honor, the BIA adopted the judge's decision with two limited exceptions, as they quoted. The first decision was that the judge noted, that the respondent would be attempting to assert any hardship to her daughter based on a situation of the respondent's own making. You're highlighting the things that the BIA did not adopt. Yes, Your Honor. So what are the things the BIA did adopt from the IJ's opinion that were not evidence, that were just the IJ's own musings or opinions, as you say, about this case? Your Honor, we believe that this statement by the IJ significantly impacted the overall decision that was – You don't have any other than the two that the BIA excluded from consideration? Court's indulgence, Your Honor. We believe that the manner in which the judge also gave weight to the psychological evaluation before him and when the BIA adopted this evaluation, it was also decided in a way that was not fair and it was not given full and fair measure. But that's a different argument, right? You're saying that the IJ weighed the evidence in the psychological report in a certain way. That's not his own opinion. That's evidence in a report, and he credited some and gave less credence to other parts. Yes, Your Honor. So I just want to make sure I'm clear because we're talking in kind of generalities. But when your argument about the IJ inserting his opinions that weren't evidence, that's just referring to the two statements that the BIA excluded from its consideration in the opinion under review. That is correct, Your Honor. Okay. Thank you for clarifying that. Thank you. You can continue. Thank you, Your Honor. Court's indulgence. As I was mentioning previously, the case of Arevalo Quintero that was decided by this court, judges have a duty to develop the record before them as they determine these cases, and we believe that the manner in which the IJ decided this case effectively hindered and was directly contrary to the evidence before him. Also, Your Honor, it is our position that the manner by deciding the case in which the IJ did and by asserting this idea that the respondent's daughter was going through the usual emotional difficulties of a teenage girl, directly ignored not only the expert witness but also the record that was before him. If it pleases the court, those are my submissions. Thank you. Ms. Gavis, you represent the Attorney General? I do. Good morning, Your Honors. May it please the court, Andrea Givas on behalf of the Attorney General. This court should deny the instant petition for review because petitioner is statutorily ineligible for cancellation of removal, the only relief she sought. This case comes down to one element, the issue of hardship. Now, as petitioner's counsel mentioned, the government does preserve its argument that this court lacks jurisdiction but recognizes that the Galvan case does allow this court to review the law and whether the immigration judge erred in holding that the evidence… The Galvan case, Gonzales-Galvan, is our case from a couple of years ago. That provides you jurisdiction, correct? That gives us jurisdiction. Correct. You're saying we don't have jurisdiction based on what? No, I'm saying we're just preserving our government argument and stating that Wilkinson, the Supreme Court case that is pending. You're not relying on Patel. No, no, no, no. You're relying on Wilkinson if it comes down your way. Correct, Your Honors. But we understand… But you don't have it yet. No, correct. We're waiting. You don't have anything to rely on. Correct. We recognize that the Galvan case does provide this court… You haven't asked us to hold this case in abeyance? No, we have not, Your Honor. Have you? No, we have not, Your Honor. We just provided… You haven't submitted any 28-J letters or anything? We did provide a 28-J letter, Your Honor. You did? Okay. Yes. And if you'd like that data, I could provide it. It's in my file. But the… Get it. So, yes, the government does acknowledge the Galvan case that provides this court… And has Wilkinson argued? It was argued on November 28th, Your Honor, so hopefully we'll have a decision fairly soon. Do the procedures for removal under 1229A apply to the cancellation of removal procedures under B? I'm sorry, Your Honor. Can you explain your question a little bit? I'm just trying to tie in the interplay of 1229A and 1229B. Do those procedures apply equally in both situations? No, 1229B is cancellation for non-permanent residents. It's a form of relief. But I understand that the question is, do the removal proceedings under A apply to those cancellation proceedings under B? Yes, Your Honor, but I'd have to probably provide a supplemental brief to outline exactly the interplay between those two regulations. Well, it goes to the question of, do you agree that an immigration judge has a duty to follow the procedure of considering all relevant evidence? Yes, Your Honor, it does. And it did. This immigration judge did in this case. And I'd like to point out on page... First of all, the immigration judge discussed the... Let me make sure I'm going with that, because I'm trying to get us in the jurisdictional realm to understand if we're agreeing on it. I tend to think it is, because when we look at the way the law is developed, maybe Wilkinson is going to clear it up, because I think it is fuzzy. But the legal question can arise when an immigration judge fails to follow correct procedure for considering. Yes. Yes, that would... And even in making a determination, the issue here in this case, it seems to get most of my attention is on that therapist letter. Correct, Your Honor. I'd like to... Oh. And I want to ask a question on that, because if we can hone in there, then you can help my focus in terms of what's going on. The therapist, you know, made these... I mean, the letter's there, and this whole business about the gap in insurance, I don't think there's... But the question arises is whether the trial judge erred if it did not even mention about certain aspects that are in this letter that would go to the heart of the question of hardship. And it did, Your Honor. And it did, Your Honor. On page JA44 and 45, it's the whole page and a half of discussing the psychologist report. And then the immigration judge further goes on, on page 51 and 52, to discuss mental health issues as a whole. He addressed a lot of parts of that letter. I mean, you're exactly right, but I want to look at the most important part of the letter. That is the hardship analysis regarding the daughter's increased risk of self-harm. And the immigration judge, at least from what I see, didn't address that at all. He discussed that she was in therapy, gave the background of therapy, discussed her strong mental support, and did say that if something happened, she could go back to therapy. But I'm dealing specifically with the increased risk of harm, of self-harm here that the therapist discussed, and he never addressed the prediction of what that would lead to. He did discuss that she would resume therapy, and that she could continue therapy even if the mother was removed. How does that address the prediction that she would maybe engage in self-harm or be at increased risk of self-harm if she's not there? I mean, how does that address that risk and the prediction of it? That's the question I'm asking. Can I just go to page JA-51, Your Honor? I'm just going to move this a little bit. Excuse me. JA-51? 51. I'll try to move this so I can speak. It starts on 1, 2, 3, 4, 5, the sixth line, which discusses the court finds it significant for a period of time. And then right after that, the next sentence is, the court finds that even in the absence of the respondent, there is a high probability that Rosalyn will continue with her counseling. So she will continue with her counseling in the absence of the mother. I'm not immediate, but the therapist makes a prediction, and the prediction is she's going to be at increased risk of harm, self-harm. The question is, there's nothing that I see in there that discusses the credibility or challenges the credibility of that therapist's prediction. If you remove her, there's an increased risk of self-harm. Doesn't he have to at least address that and determine whether that's a credible determination or determine what that prediction means? Well, your honors, I would go to the fact that this court has said the agency is not required to write, has no duty to write and discuss every piece of evidence. And that goes back to the Ibarra-Chavez case, that it was presumed the agency reviewed evidence presented to them and made their decision on relevant evidence. So although maybe the immigration judge didn't focus on that specific point. Very important point. I don't need to cut you off. I want to get your point out. But I don't want to be arguing something that is not what we're talking about. It seems like the point has to do with this letter. And you mentioned, well, the therapy is going to continue. That's not the prediction. The prediction is not the therapy is going to help her do that. The prediction is if you lose mama, then there's an increased risk. That's the point I'm trying to get to as to doesn't he have to address that? Not everything. But that's a very important point. If you if you take someone out of the home, then there's an increased risk of self-harm, meaning suicide and all other kinds of stuff can happen. And there's nothing to address that. Well, your honor, I would stick by the fact that the agent immigration judge focused on that. She would continue her therapy and he the self as to the self harming. It did stop after petitioner received excuse me, petitioner's daughter received counseling. And that was testified to by petitioner. You got you already have therapy and you have mama. What they're saying is is taking mama out. That's going to cause increased risk. So therapy is already going on. Correct. And so so that's what my point is to simply say, well, you're going to have therapy. That's not the point. What we're reviewing here is what's the harm? Hardship is going to occur if you remove the mother from the door. And I think that goes to my overall point, your honor, which is the immigration judge focused on many points. And that he says he carefully read all the evidence, carefully weighed all the evidence in the record. And in that encompasses the future, the self-harm. And as to the self-harm, the government would argue that both petitioner's counsel. I'm sorry, petitioner's testimony and the psychologist report both said that the self-harm stopped when therapy began and continued. So as to your point, no, there's no nothing in the record that specifically speaks to that one little point. But the immigration judge focused and discussed the psychologist report at length and specifically stated in his opinion, he carefully read the evidence, carefully weighed all the evidence of the record. Both individually and cumulatively. And that's the government's position for that question, your honor. Thank you. Okay. And as to the two comments, the government would just like to note that the board disavowed those two specific statements regarding petitioner's claim that the immigration judge used personal opinion. The board specifically disavowed, adopted and affirmed the decision with two specific and explicit statements kept out of the decision. And then lastly, going to petitioner's third point, the agency did consider the health and age and circumstances and laid out the facts in this case. It is petitioner's burden to show eligibility for relief. She has not met her burden. And as this court said in Galved, showing exceptional and extremely unusual hardship is a very high evidentiary burden that petitioner has not shown. Therefore, if there's no other questions from the court, respondent would like to ask the court to deny the petitioner for review because petitioner has not shown the exceptional and extremely unusual hardship required, excuse me, element that is required for cancellation of removal. Thank you. Thank you, Ms. Garves. Ms. Corbett. Thank you, your honor. Respondent has mentioned repeatedly that the self-harm in this case had stopped. And I would like to turn the court's attention to Joint Appendix page 265, which is again the report by the psychologist. In this report, psychologist has mentioned very clearly that Roslyn has demonstrated inconsistent progress marked by significant improvement and relapses. Had the judge considered the evidence in totality, your honor, I do not believe that he would arrive at the same conclusion. The report gave a very balanced, objective view on Roslyn's condition, giving both the positives and the negatives. We believe that the judge in this case only considered the factors that weighed favorably towards her improvements and not those that showed her condition in reality. The report also mentions very clearly at Joint Appendix page 265, she continues with sadness, difficulties to manage increased stress from school, lack of attention in class, and interpersonal conflicts with her father. The IJ could not have considered all the evidence before him because had he done so, we believe the court would have arrived at a different conclusion. And we believe that record was very clear in terms of the hardship that she would suffer in the absence of her mother had she been moved to Mexico. Well, we know that the IJ and the BIA did consider this expert report, right? Because they both talked about it and said they considered it, right? We don't even require them to say they considered it, but this was important evidence and they said they considered it. They talked about the substance of it. Where is the requirement that they have to kind of go point by point and describe their response to each part of it? Actually make a finding about each part that they accept and reject? I don't know if there's a requirement for the judges to do this, but I would submit that the BIA decision and also the judges' decision as it was rendered do not fully address the report in its totality. Even though there's no requirement to go point by point and address each line in the report, we accept that. The report is still biased towards only the manner in which she would not be affected. The report does not mention, as this court also asked earlier, the way in which she would be affected in the future considering her self-harm, considering the fact that there was inconsistent progress, considering her relapses in her treatment. The decisions do not mention those aspects of the report. Well, the IJ has to make a predictive finding. Again, we can't review that finding, but the IJ makes a predictive finding about what will happen to a U.S. citizen child if the parent is removed. And the IJ's finding was that she would still have insurance, still be able to get counseling. Things were on the upswing, and the IJ's prediction was that it would not rise to the level of exceptional hardship. And that finding, that prediction is different, maybe different than the prediction of the psychologist who said there would be an increased risk of self-harm and these other things. Doesn't that tell us that the IJ didn't agree with the expert's prediction? Or maybe did, but just thought an increased risk isn't the same as exceptional hardship? I do believe that issue was that the judge did not agree with the expert's report, Your Honor. But I also think that the judge's decision, specifically those two sections that were not adopted by the board, as we have accepted, but the failure to include the aspects in which she would be negatively impacted in the future, and his own personal opinion as to how she would be fine in the absence of her mother. Cumulatively, those two factors do show that the judge did not properly consider, adequately consider all the evidence before him. So if we set this back for the IJ to address the therapist's prediction of self-harm, because not addressing that, it's not a little small thing. When you're talking hardship, someone leaving to say that that person will have self-harm, suicide, or injure themselves, you ought to at least say something. Because if you just leave it there, you have an expert opinion that says that's going to happen. But if we send it back and IJ just looks at it and says, well, I don't find that to be correct, then it's not reviewable, is it? No, Your Honor. Okay. Would there have to be new evidence? This is just a curiosity question. If it is sent back, since she'll be, what, 20 or 21, and the self-harm was when she was 11, right? When she was around 14, Your Honor, I believe. Well, the hearing was when she was 14 or 15. The self-harm was when she was 11, I believe. Would there have to be, is there a procedure for new findings or new evidence to be made, new evidence to be put in front of the IJ? Or would it be on this old record? I apologize. The board, at its discretion, may provide new evidence from respondents if it is necessary at that time. And, of course, I imagine she'd be willing to put forward the evidence as is necessary. Thank you, Your Honor. That point is interesting. It's a very good point, Judge Blushen. That is, given the age. We know the age, and we're talking 14, 21. That's a big difference. But we are locked in on this record. That's what you're saying. If we send it back, then the board can send it back to the IJ, I guess, for additional finding in light of different circumstances. You're saying that the whole, even if we send it back for that one point, it could still have a whole hearing on this? Your Honor, I would believe that the judge, while the board, at its discretion, may require new evidence at that time to consider hardship. The record up until this point is clear. And the hardship has been established by the respondents. And I believe the judge will also need to consider the evidence cumulatively and not just whatever they may require at that time, if anything. So if we send it back, you'd have to take account of what our age is now. That is correct, Your Honor. But we can't take account of what our age is now.  I didn't hear that, Your Honor. Can you please repeat that? Can our panel take account of the age, that she's 20 years old now? Well, it depends, Your Honor, because she's still eligible for this. The respondent is still eligible because she's under 21 years old. So I don't think her age would negatively impact the petition or any further proceedings at this time. Okay. Thank you. Thank you, Your Honor. We'll come down to Greek Council and then take a brief break. This honorable court will take a brief recess.
judges: Robert B. King, James Andrew Wynn, Allison J. Rushing